# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

Anthony J. Casale, MD,

    Plaintiff,

    v.                             Case No. 2:11–cv–1124

Nationwide Children's Hospital,         Judge Michael H. Watson

    Defendant.

## OPINION AND ORDER

The Court considers the following discovery motions: Plaintiff's motion for sanctions, ECF No. 61; Defendant's motions to compel, ECF Nos. 62 & 70; and Plaintiff's motion for extension of time to complete discovery, ECF No. 69.  For the following reasons, the Court denies Plaintiff's motion for sanctions, ECF No. 61, grants in part Plaintiff's motion for extension of time, ECF No. 69, denies Defendant's motion to compel, ECF No. 62, and will issue subsequent orders on the remaining issues.

## I.      FACTS AND ANALYSIS

### A. Plaintiff's Motion for Sanctions Pursuant to Rule 37(b)

#### 1. Facts

The parties do not dispute the relevant facts with respect to Plaintiff's motion for sanctions.  On August 7, 2013, the Court entered an Order granting

Defendant's motion to strike Plaintiff's motion to compel as premature. Order,

ECF No. 53. The Order directed Defendant to:

> re-review any redacted or withheld documents and produce to
> Plaintiff by Friday, August 9, at 2:00 p.m. any documents which
> may have heretofore been erroneously withheld or redacted
> along with an updated privilege log in order to narrow the
> documents that need to be discussed. *Defendant shall also
> confirm there have been no redactions or withholdings other than
> what appears on the updated privilege log.*

*Id.* at 2 (emphasis added). It is not clear whether Defendant confirmed on

August 9, 2013 that there were no outstanding redactions or withholdings other

than what was on its then-current privilege log, but it is undisputed Defendant did

not inform Plaintiff that two documents existed which were neither produced to

Plaintiff nor reflected on the privilege log. Those documents are three pages of

handwritten notes by Rhonda Comer, NCH General Counsel, regarding her

interviews with various witnesses in this case and one page of notes by Rick

Miller, NCH's Chief Operating Officer, listing the pros and cons of withdrawing

Plaintiff's offer of employment.

Defendant provided those documents to Plaintiff on September 27, 2013.

The documents were not labeled as a supplemental disclosure but rather were

contained along with Defendant's response to Plaintiff's second set of document

requests. That production included nine documents, but apparently Defendant

did not provide paper versions of the nine documents or a CD with nine separate

documents. Instead, it provided a CD which contained a separate TIFF image of

each page of each document such that what Plaintiff received was a CD with 172

separate TIFF images, the final four of which were the two documents at issue.

Moreover, the cover letter accompanying the CD did not mention any

supplemental disclosure nor mention these documents by name at all.  Rather, it

said, "[e]nclosed are Defendant's Responses to Plaintiff's Second Request for

Production of Documents.  Also enclosed is a CD containing documents

produced to Plaintiff."  Cover Letter, ECF No. 61-4.  The second set of document

requests sought, and the first 168 TIFF images on the discovery response

included, medical staff by-laws and credentialing manuals.

### 2.  Analysis

Federal Rule of Civil Procedure 37(b)(2) states:

> If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.

Fed. R. Civ. P. 37(b)(2).[1]  It is unclear whether Plaintiff asks the Court to sanction

Ms. Comer, Mr. Miller, Defense Counsel, or all three.

With respect to Ms. Comer, Plaintiff argues Ms. Comer's failure to disclose

the existence of her notes prior to September 27, 2013 violates the Court's

August 7, 2013 Order because Ms. Comer had been present in eight depositions,

had heard deponents testify that they had no knowledge of interviews or notes

supporting an allegation of a negative interaction between Plaintiff and

---

[1] Rule 26(e) sets forth a party's obligation to supplement its disclosures and responses, but Plaintiff does not argue Defendant violated that rule.

Nationwide Children's Hospital ("NCH") staff, and she must have remembered her own notes but failed to produce them. Plaintiff does not specifically argue that Mr. Miller's failure to disclose his notes was a violation of the Court's Order but implies as much. Plaintiff also appears to seek sanctions against Defense Counsel either for the failure to previously disclose or because of the manner in which counsel eventually produced the documents.

Indeed, while some are undated, the documents certainly appear to have been written prior to the Court's August 7, 2013 Order. Yet, the documents were neither disclosed to Plaintiff nor referenced in any privilege log despite the Court's Order to re-review any redacted or withheld documents, produce those documents that should have been produced, and confirm by August 9 that there were no redacted or withheld documents other than those appearing on the privilege log. This evidence supports Plaintiff's assertion of a violation.

In response, Defendant simply argues there was no "withholding" because it did not know the documents had not been produced. Defendant states via a declaration of Defense Counsel Daniel Clark that Defense Counsel did not learn of the existence of Ms. Comer's notes until after the September 10, 2013 depositions of Karen Allen and Kelly Wheatley. Clark Decl. ¶ 2, ECF No. 65-1. Mr. Clark further states that Ms. Comer's notes were not turned over to his law firm but were rather incorrectly filed at NCH with documents relating to the litigation hold in this case. *Id.* at ¶ 3. Mr. Clark also testified that Defendant discovered Mr. Miller's notes while it was searching for Ms. Comer's notes. *Id.* at

¶ 4.  Thus, Defendant essentially argues it did not violate the Court's August 9,

2013 Order because it did not knowingly withhold these documents.

The Court agrees with Defendant.  The evidence shows Defense Counsel

did not know, until after September 10, 2013, that the documents had been

withheld from production.  Plaintiff offers no contrary evidence.  Defense Counsel

did not, therefore, knowingly violate the Court's August Order, and the Court will

not sanction Defense Counsel for the late disclosure.[2]

However, it is unclear whether Plaintiff's Counsel seeks sanctions against

NCH for Mr. Miller or Ms. Comer's conduct, and there is no admissible evidence

regarding whether Ms. Comer or Mr. Miller violated the Court's Order.[3]  If

Plaintiff's Counsel wishes to pursue her motion for sanctions against NCH,

arguing it violated the Court's order, she may renew her motion, and the Court

will thereafter determine whether it requires additional briefing or evidence and

whether NCH violated the Court's Order.  However, the Court encourages the

---

[2] Moreover, it appears from Defendant's response that, even if the Court had granted
Plaintiff's motion, several of Plaintiff's requests are substantially moot.  For example,
although Plaintiff requests an explanation for why the documents were not produced
earlier and an affidavit or declaration that no documents are known to have been
withheld, Defense Counsel has provided an explanation for the late production and has
confirmed there are no additional relevant, responsive documents being withheld.  Clark
Decl. Ex. B, ECF No. 65-1 (October 21, 2013 letter from Douglas Matthews to Ann
Oldfather).

[3] Defendant's brief states, without citation, that Ms. Comer believed the documents had
been provided to Defense Counsel.  Resp. 2, ECF No. 65.  Mr. Clark repeats that idea
in his declaration, but he does not have personal knowledge of Ms. Comer's state of
mind.  Therefore, paragraph three of his declaration is inadmissible to show Ms.
Comer's state of mind.  Neither Defendant's response nor Mr. Clark's declaration
explain why Mr. Miller's notes were not turned over to Defense Counsel during
discovery.

parties to attempt to resolve any such dispute without Court intervention. Further, the Court encourages Plaintiff to be circumspect in pursuing the matter further given Defense Counsel's representations as to Ms. Comer's misunderstanding and given the need to avoid additional, protracted, satellite litigation over discovery.

For these reasons, the Court **DENIES** Plaintiff's motion for sanctions with respect to Defense Counsel and **DENIES WITHOUT PREJUDICE TO RENEWAL** Plaintiff's motion for sanctions with respect to Ms. Comer and Mr. Miller.

Although the Court denies sanctions and finds there is no evidence suggesting Defense Counsel purposely withheld these documents from Plaintiff, the Court is nonetheless troubled by counsel's September 27, 2013 production of those documents. Plaintiff argues Defendant's "stealth" production of the two documents indicates that it intended its late production to go unnoticed. Regardless of Defense Counsel's intent, it is not surprising that the production went unnoticed until October 14th. The documents were simply attached to the end of a 172-file CD which purported to be a response to Plaintiff's second document request seeking medical staff by-laws and credentialing manuals. Furthermore, neither the cover letter, the written response to Plaintiff's document request, nor the CD files themselves indicate in any way that the response contains supplemental material that was inadvertently withheld from prior responses. There is absolutely nothing about the response which indicates it

contains both responsive material *and* supplemental material not previously disclosed. Intentionally or not, the response was less than adequate.

Moreover, the Court grants in part Plaintiff's motion for extension of time to complete discovery in that it will extend the discovery deadline in order to provide for completion of the depositions of Mr. Miller, Mr. Allen, Ms. Edson, Ms. Zaremski, and Ms. Allen, which were scheduled for October 15 and 16, 2013, but were cancelled by Plaintiff's Counsel. The depositions could arguably have proceeded on October 15th and 16th, as the documents do not appear to relate to Mr. Allen or Ms. Edson, and Plaintiff's Counsel had possession of the documents with sufficient time to incorporate questions regarding those documents at the scheduled depositions of Mr. Miller, Ms. Allen, and Ms. Zaremski. Plaintiff's Counsel admits she read the documents on October 14th. Mot. 4, ECF No. 61. They were neither complicated nor lengthy. On the other hand, Plaintiff's Counsel was not provided a typed transcription of the handwritten notes until later on October 15th.

Therefore, considering the totality of the circumstances, the Court concludes it was reasonable for Plaintiff's Counsel to cancel the depositions until she had the opportunity to review the typed transcription, and the Court will extend the discovery deadline to permit those depositions to be rescheduled. The Court will rule on the remainder of Plaintiff's motion for extension of time in a subsequent Order.

## B. Defendant's Motion to Compel Due to Plaintiff's Waiver of Attorney-Client Privilege

The Court will first set forth the parties' versions of the facts with respect to Defendant's motion to compel.  The Court will then analyze separately each category of documents over which Defendant seeks a waiver of privilege.

Defendant states its first set of document requests to Plaintiff sought "all written statements and other documents . . . pertaining to your potential employment with NCH and the claims made in the Complaint" and "[a]ll documents created by any other person . . . pertaining to your potential employment with NCH and the claims made in the Complaint."  Pl's Resp. to Def. First Req. for Prod. Docs. ¶¶ 9, 10, Mot. Compl. Ex. B, ECF No. 62-2.  Plaintiff responded to the requests on April 25, 2012.  In that response, Plaintiff did not object to request numbers nine or ten on the basis of privilege, although he made boilerplate objections to other requests based on attorney-client privilege.

Defendant states Plaintiff withheld documents from that production but did not produce a privilege log identifying the withheld documents.  Specifically, Defendant argues there exist documents in the possession of the law firm Wyatt, Tarrant & Combs ("Wyatt Firm") which were responsive to those requests but which were never produced.  Plaintiff argues none of Defendant's discovery responses encompassed the Wyatt Firm documents, and that is why those documents were not produced with Plaintiff's April 2012 response.

Moreover, Defendant states that although Plaintiff's April 2012 response indicated that confidential documents would be provided after entry of a protective order, Plaintiff did not provide those documents or a privilege log even after the protective order was issued on October 11, 2012.

Defense Counsel wrote Plaintiff's Counsel after the protective order was issued seeking the promised supplemental material. Mot. Compel Ex. C, ECF No. 62-3. Plaintiff supplemented his production on January 28, 2013 but did not include any of the privileged or confidential documents, and the supplemental response did not contain a privilege log. Defense Counsel emailed Plaintiff's Counsel on February 7, 2013, asking why the previously withheld confidential documents had not been produced given the issuance of the protective order. Email from Daniel Clark to Rick Evans, Mot. Compel Ex. D, ECF No. 62-4.

Plaintiff supplemented his production again in March 2013. That supplemental production did not contain privileged or confidential documents or a privilege log.

Discovery in the case then closed, but it was reopened on July 10, 2013.

On July 24, 2013, Defense Counsel wrote Plaintiff's Counsel regarding Plaintiff's failure to produce confidential documents in response to the October 2012 protective order. Letter from Daniel Clark to Ann Oldfather, Mot. Compel Ex. E, ECF No. 62-5.[4] Defense Counsel asked Plaintiff's Counsel to review all of

---

[4] Plaintiff's Counsel contends she never received Defense Exhibit E but rather received a different version of the letter, attached as Exhibit 2 to Plaintiff's response. The letters

Plaintiff's responses and confirm that all responsive documents were collected and produced.  *Id.*  Defense Counsel listed certain responses that he felt obviously should have been supplemented.  *Id.*

Plaintiff's Counsel argues that given the ongoing dispute over *Defendant's* failure to produce a privilege log, she contacted Defense Counsel and asked whether Defendant would prefer she focus on that dispute or turn her attention to his July 24th letter.  Aug. 2013 emails between Ann Oldfather and Daniel Clark, Resp. Ex. 3.  Defense Counsel asked Plaintiff's Counsel to focus both on the dispute over Defendant's failure to produce a privilege log and on outstanding depositions.  *Id.*

On August 20, 2013, the Court held a hearing on Plaintiff's motion to compel due to Defendant's failure to produce a timely and sufficient privilege log. At that hearing, Defense Counsel explained Defendant's failure to produce a privilege log but also referenced Plaintiff's deficiencies, stating "this is an instance where the plaintiff waited a long time to raise [Defendant's failure to produce a privilege log] and in fact still has not provided a privilege log to us for their production which was several months before ours."  Hr'g. Tr. PAGEID # 869, ECF No. 60.  Plaintiff's Counsel responded, "[t]he plaintiff didn't do the same thing here that Nationwide did.  We came right out and stated in our answers that we would produce a privilege log."  *Id.* at PAGEID # 874–75.

are slightly different (both in date and in substance) but both request the confidential documents.

Plaintiff's Counsel then told the Court that in response to Defense Counsel's emails asking why confidential or privileged documents had not been produced after the issuance of the protective order, Plaintiff's Counsel in fact produced those previously withheld documents on January 30th and March 3.[5]  *Id.* Plaintiff's counsel said that at that point, "[t]hey had full disclosure from us.  And I have, in the very limited amount of time that I have had, I've gone back and looked at the documents that are in our file and what we produced.  And I don't think we have anything to list on a privilege log."  *Id.* at 875.

On August 28, 2013, Plaintiff's Counsel again notified Defense Counsel that Plaintiff would be supplementing his discovery responses.  Plaintiff then supplemented his response on September 6, 2013 with over 1,500 documents which had never before been produced.  Additionally, Plaintiff produced a privilege log for the first time on September 6, 2013.  The privilege log lists three documents, all of which were in Plaintiff's Counsel's possession well before the April 2012 document production.[6]  Defendant states Plaintiff failed to explain why these 1500 documents were not previously disclosed.

Defendant notified Plaintiff on September 18, 2013 that Plaintiff's privilege log was insufficient to permit Defendant to assess the claim of privilege. Defendant also notified Plaintiff of its belief that additional documents were being

---

[5] As noted above, Defendant contends Plaintiff's production in late January and early March did not contain any of the previously withheld documents.
[6] Defendant states there was another document which was produced in a redacted form that was not listed on the privilege log.

withheld but were not listed on the privilege log.  For instance, based on one of the documents that Plaintiff produced on September 6, Defense Counsel believed Plaintiff may have been consulting an attorney in December 2010, but the privilege log failed to identify any attorney-client communications from that time period, and none had been produced.

The parties then participated in a telephonic meet-and-confer conference on September 30, 2013.  During that conference, Plaintiff's Counsel confirmed that Plaintiff had been consulting with an attorney in December 2010.  The attorney, Mr. Luber, an attorney with the Wyatt Firm, had advised Plaintiff in 2010 with respect to his negotiations with Defendant.  Defendant asserts Plaintiff had in his possession since December 2010 at least one of the communications between himself and Mr. Luber but failed to produce that communication or identify it on his September 6 privilege log.  Moreover, Plaintiff's current counsel acknowledged on September 30 that the privilege log did not include any responsive documents in the Wyatt Firm's, or any law firm's, possession and that Plaintiff had not even made an effort to collect such documents prior to its April 2012 response despite the fact that those documents were within his control.

Then, on October 18, 2013, Defendant deposed Plaintiff's administrative assistant, Michelle Blessett, who testified that Plaintiff stores University Urology documents in a storage unit.  Defendant states Plaintiff has never produced any University Urology documents in response to a discovery request, listed those

documents on a privilege log, nor made any effort to collect those responsive documents.

Plaintiff's Counsel submitted its fourth version of a privilege log on November 25, 2013.  By the time that privilege log was produced, Plaintiff's Counsel had reviewed the Wyatt Firm documents, turned over the responsive, non-privileged documents, and the November 25 privilege log reflected any privileged Wyatt Firm documents.

### 1. Plaintiff's Notes/Timeline to Ms. Oldfather and the Wyatt Firm Documents

In early 2011, Plaintiff created a narrative and timeline about his claims against Defendant for other potential attorneys and Ms. Oldfather, Plaintiff's current counsel.  Ms. Oldfather did not produce those documents or list them on a privilege log until September 6, 2013.  Moreover, Ms. Oldfather did not produce documents held by the Wyatt Firm (or any other attorney) until after September 6, 2013.

Plaintiff's Counsel explains her failure to produce those documents or list them on a privilege log by stating she did not believe the documents were responsive to any document request.  Resp. 2, ECF No. 66 ("Indeed, there is not even one Request that instructs Plaintiff to turn over his own notes or summaries that he might have written about the events of 2010, and this is indeed the proper description of what Dr. Casale prepared for his litigation counsel (the timeline and the narrative on the Privilege Log . . . ) that NCH maintains it requested and is

entitled to receive."); ("NCH served overly broad discovery that could not have put Plaintiff on notice that he was supposed to go get records from Mr. Luber, except possibly, and only possibly, by an after-the-fact parsing of the language of a Request.").

Defendant contends the documents are plainly responsive to request numbers nine and ten of its first request for production of documents, which requested "[a]ll written statements and other documents . . . pertaining to your potential employment with NCH and the claims made in the Complaint" and "[a]ll documents created by any other person . . . pertaining to your potential employment with NCH and the claims made in the Complaint." Pl's Resp. to Def. First Request for Prod. Doc. ¶¶ 9, 10, Mot. Compel Ex. B, ECF No. 62-2.

A review of the parties' briefs and the evidence submitted makes clear that Plaintiff's conduct with respect to these documents is not analogous to the conduct for which the Court found Defendant waived its right to assert privilege.

Previously, the Court found that Defendant had responded to Plaintiff's first set of interrogatories in September and October of 2012. Opinion and Order 2, ECF No. 59. As part of the response, Defendant had produced twenty redacted documents. *Id.* It had also reviewed about sixty additional documents, determined those documents were responsive, but nonetheless chose to withhold those sixty documents on the basis of privilege. *Id.* Defendant never notified Plaintiff that it was withholding those sixty otherwise responsive documents, and it never produced a privilege log detailing the assertion of

privilege over those documents. *Id.* Defendant also failed to notify Plaintiff that the twenty redacted documents were redacted on the basis of privilege rather than relevance. *Id.* Defendant did not produce a privilege log regarding the withheld or redacted documents until July of 2013, when Plaintiff realized during a deposition that Defendant had redacted documents due to an assertion of privilege. *Id.*

Here, there is no evidence Plaintiff earmarked the timeline, narrative, or Wyatt Firm documents as responsive but chose to withhold them from his April 2012 response on the basis of privilege while failing to produce a privilege log. Instead, Plaintiff did not produce the documents because his counsel believed they were not responsive. Although the narrative and timeline "pertain to the claims made in the Complaint," and thus the Court agrees with Defendant that they fall within the document request, the evidence shows Plaintiff had a good faith belief that the documents were not responsive.

With respect to the timeline and narrative, Plaintiff's Counsel states that it was only after Plaintiff's August/early September supplemental response was finalized and under review that Plaintiff's Counsel determined "there was just enough uncertainty about [the] discoverability" of the narrative and timeline that she decided to disclose them on a privilege log, even though she would not expect such documents to be listed on a privilege log. Resp. 11, ECF No. 66. There is no evidence she earmarked those documents as responsive before the

April 2012 response.  As such, they were not "withheld" from production; they simply were not produced because they were not deemed responsive.

Nonetheless, as counsel's statements in a brief are not evidence, the Court **DIRECTS** Plaintiff's Counsel to file an affidavit within **SEVEN DAYS** explaining and attesting to the fact that she did not determine those documents to be discoverable until the timeframe of Plaintiff's August/September 2013 supplemental response.  If Plaintiff's Counsel determined those documents were responsive earlier, but failed to include them on a privilege log, the Court will revisit its determination of waiver as to those documents upon a renewed motion by Defendant.

With respect to the Wyatt Firm documents, the evidence shows Plaintiff did not believe those documents were responsive to any of Defendant's document requests and therefore never retrieved those documents or reviewed them for privilege.  Aug. 28, 2013 Letter from Ann Oldfather to Daniel Clark, Resp. Ex. 7, ECF No. 66-7 ("We have no additional documents presently known to us responsive to Requests Nos. 9 and 10.").  When Defendant notified Plaintiff that it believed there were attorney-client communications from 2010 which should have been produced, Sept. 18, 2013 Letter from Daniel Clark to Ann Oldfather, Mot. Compel Ex. H, ECF No. 62-8, Plaintiff immediately gathered the documents and undertook a review for privilege, expressly notifying Defendant that his counsel would create a privilege log for any documents he withheld on the basis of privilege.  October 23, 2013 Letter from Ann Oldfather to Daniel Clark, Resp.

Ex. 8, ECF No. 66-8 ("I am unaware of any request or interrogatory that asked Plaintiff to identify attorneys with whom he consulted in 2010 or 2011. If a request isn't made, there is nothing to put us on notice of a 'repository' we are supposed to go get . . . . I will treat your letter of October 21, 2013 as a discovery request for 'the files of Dr. Casale's attorney at the time of his 2010 dealings with NCH.' Please allow me the typical thirty (30) days to get that together and respond accordingly.").

As Plaintiff's Counsel did not believe the timeline, notes, or Wyatt Firm documents were discoverable until August or September of 2013, she did not "withhold" them from the April 2012 response. Further, her subsequent actions regarding those documents were proper under Rule 26(e)(1). The Court finds waiver is not appropriate for failure to disclose documents that were not deemed responsive, lest every supplemental response become the basis for waiver. Rather, the appropriate remedy is to compel disclosure, subject to a proper and timely privilege log.

Nonetheless, if Plaintiff failed to produce the documents or a timely privilege log *after* the documents were deemed responsive, waiver could be an appropriate remedy. *E.g.*, *Burlington Northern & Santa Fe Railway Co. v. United States District Court for the District of Montana*, 408 F.3d 1142 (9th Cir. 2005) (upholding district court's finding of waiver where party failed to produce privilege log for five months). In *Burlington Northern*, the United States Court of Appeals for the Ninth Circuit analyzed Rule 26(b)(5) and held that "boilerplate objections

or blanket refusals inserted into a response . . . are insufficient to assert a privilege." *Burlington Northern*, 408 F.3d at 1149.  However, it eschewed a per se rule that failure to produce a privilege log within thirty days constitutes automatic waiver.  *Id*.  Instead, it directed district courts to make a case-by-case determination, considering the following factors: (1) the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged; (2) the timeliness of the objection and accompanying information about the withheld documents; (3) the magnitude of the document production; and (4) other particular circumstances of the litigation that make responding to discovery unusually easy or unusually hard.  *Id*.  The Court applies a modified version of that analysis in this case, considering also the prejudice to the party seeking discovery, the flagrancy of the violation, and whether the responding party made a good faith effort to comply with the discovery rules.  Accordingly, the Court performs the modified *Burlington Northern* analysis to determine whether Plaintiff waived his right to assert privilege due to his actions after finding the documents responsive.

a. *The degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged; the timeliness of the objection and accompanying information about the withheld documents*

These factors weigh in Plaintiff's favor.[7]

Once Plaintiff's Counsel determined the documents were responsive, Plaintiff timely reviewed the material and developed a privilege log.  For instance, Plaintiff received Defendant's request for the Wyatt Firm documents on September 18, 2013, the parties participated in a meet and confer on September 30, 2013, Defendant followed up with a letter on October 21, 2013 indicating it believed the Wyatt Firm documents were "highly relevant and responsive," and Plaintiff responded two days later that he would treat Defendant's October 21 letter as a formal discovery request and would provide the responsive documents and a privilege log within thirty days.

An approximately one month delay (between Defendant's October 21 letter and Plaintiff's fourth version of the privilege log) is sufficient.  *Burlington Northern*, 408 F.3d at 1149 ("service within 30 days, as a default guideline, is

---

[7] Defendant's contention that Plaintiff's boilerplate assertion of privilege in his initial discovery responses is inadequate is misplaced for the reasons discussed above. Plaintiff's Counsel did not make a boilerplate assertion of privilege (or any assertion of privilege) with respect to document request numbers nine and ten because she reasonably did not believe the requests covered these documents.  Therefore, the failure to include a privilege log during the period in which Plaintiff believed the documents were not responsive is unlike the situation wherein Defendant specifically withheld documents *determined to be responsive on the basis of privilege* pursuant to a boilerplate assertion of privilege without providing a contemporaneous privilege log. There, the Court found the boilerplate assertion inadequate to preserve the privilege. Here, the *Burlington Northern* analysis is simply irrelevant until Plaintiff determined the documents were responsive.

sufficient."). Even a two month delay (between Defendant's September 18 letter, which prompted Plaintiff to review the Wyatt Documents, and Plaintiff's November privilege log) is a far cry from Defendant's failure, which lasted almost an entire year *after* it determined the documents were responsive but privileged.

Moreover, unlike Defendant's boilerplate assertion of privilege, which was contained only in its answers to interrogatories and not in a contemporaneous privilege log, Def. Resp. to Pl's First Discovery Requests, PAGEID # 812, 815–19, 822–23, 825, Ex. 58-2, Plaintiff's timely privilege log listed the author, the recipient, and a description of the content showing the nature of the documents and that the documents sought legal advice. Under *Burlington Northern*, Plaintiff's privilege log is presumptively sufficient to overcome waiver. *Burlington Northern*, 408 F.3d at 1149 ("providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient.").

Accordingly, these factors weigh in Plaintiff's favor.

b. *The magnitude of the document production*

This factor is neutral. The magnitude of the production has no relevance to whether Plaintiff believed the documents were responsive, and once responsiveness was determined, counsel timely produced a privilege log.

       c. *Other particular circumstances of the litigation that make responding to discovery unusually easy or unusually hard*

As before, the Court finds there are no unusual circumstances that would make responding to discovery particularly easy or difficult in this case.  This factor is therefore also neutral.

       d. *The prejudice to the party seeking discovery*

This factor weighs in favor of Defendant but not heavily.  There is no prejudice to Defendant in Plaintiff's production of a timely privilege log after the documents were determined responsive.  However, modifying this factor to consider the late production of responsive documents, the Court concludes Defendant was slightly prejudiced.  The late nature of the production is partly due to Defendant's vague discovery requests; but nonetheless, Defendant contends it could have used some of the documents during Plaintiff's deposition.  Although Defendant cannot question Plaintiff about the privileged documents, the Court finds Defendant was possibly prejudiced by having to depose Plaintiff without the supplemental discovery or the knowledge that Plaintiff had consulted with counsel during his negotiations with NCH.  Accordingly, the Court finds this factor weighs slightly in favor of Defendant.

       e. *The flagrancy of the violation, and Plaintiff's good faith efforts*

These factors weigh in Plaintiff's favor.  Unlike Defendant's actions, which flagrantly violated Rule 26(b)(5), Plaintiff's failure to produce responsive documents was not flagrant.  There is no evidence Plaintiff believed the Wyatt

Firm documents were responsive but failed to collect them or that Plaintiff reviewed them and intentionally withheld them on the basis of privilege without producing a privilege log. Likewise, assuming Plaintiff's Counsel provides an affidavit to this effect, she believed the narrative and timeline were not discoverable until late August or early September 2013.[8]  In fact, the communications between Ms. Oldfather and Mr. Clark show Plaintiff's Counsel did not believe the Wyatt Firm documents were responsive. Once she construed Defendant's letter as a document request for those documents, she promptly undertook the proper steps to produce responsive documents and create a privilege log in compliance with Rule 26.

In sum, the facts reflect a basic misunderstanding as to whether certain documents were responsive to Defendant's document requests. Moreover, the modified *Burlington Northern* analysis shows that Plaintiff's Counsel's actions taken after she determined the documents were responsive but privileged do not warrant waiver. As there is no evidence Plaintiff intentionally withheld responsive

---

[8] The record supports Plaintiff's Counsel's assertion that she did not identify any documents as responsive but privileged until after the August 20th hearing, and the Court therefore does not find her statement at that hearing that she believed there were no documents to list on a privilege log to be evidence of bad faith.

Additionally, the Court notes that, despite Defendant's argument to the contrary, the Court did not base its prior finding of waiver on Plaintiff's Counsel's statement. Rather, it found Defendant argued that it was acting in good faith by refusing to produce a privilege log until Plaintiff produced his privilege log. The Court concluded Plaintiff's Counsel's statement weighed against that argument. But, even if it were true that Plaintiff owed Defendant a privilege log during 2012, a tit-for-tat refusal to comply with Rule 26 is not indicative of good faith. Moreover, the remainder of the record supported the Court's finding that Defendant did not act in good faith.

documents on the basis of privilege without providing a timely privilege log, the Court denies Defendant's motion for waiver.

Nonetheless, in order to avoid prejudice to Defendant, the Court will permit Defendant to reopen Plaintiff's deposition, should it desire to do so. Moreover, if Defendant can demonstrate it requires additional discovery based on its review of the newly disclosed documents, it may move for an extension of the discovery deadline, detail why these documents lead Defendant to require the additional discovery, and the Court will rule on any such motion. The Court finds that reopening Plaintiff's deposition and permitting additional *necessary* discovery is sufficient to remedy any prejudice to Defendant based on Plaintiff's late disclosure. Waiver of privilege over the documents is not an appropriate remedy for the reasons discussed above.

### 2. "Confidential Documents"

The Court construes Defendant's motion as arguing that Plaintiff stated in his initial discovery response that certain documents were withheld on the basis of confidentiality and would be produced after entry of a protective order. Defendant contends that even though a protective order was issued, Plaintiff never produced those documents. The Court construes Defendant's motion as requesting un-redacted versions of those documents.

From the parties' recitation of the above facts and the Court's independent review of the record, however, the Court makes the following factual findings. Plaintiff's April 2012 response to Defendant's discovery request indicated that

certain documents were being withheld but would be produced after issuance of a protective order. Pl's Resp. to Def. First Request for Prod. Docs. ¶¶ 5, 7, 17, Mot. Compel Ex. B, ECF No. 62-2. A protective order was issued on October 11, 2012. ECF No. 24. Subsequently, Defense Counsel repeatedly asked Plaintiff's Counsel for the previously promised confidential documents. Mot. Compel Exs. C, D, E, ECF Nos. 62-3, 62-4, 62-5.

Plaintiff's Counsel has stated the reason Plaintiff failed to provide the confidential documents after issuance of the protective order is that Plaintiff had produced those documents in his late January and early March 2013 supplemental disclosures, Hr'g Tr. PAGE ID # 874–75; Aug. 28, 2013 Letter from Ann Oldfather to Dan Clark ("I believe you have overlooked the two productions that were indeed made subsequent to entry of the Protective Order."). But Plaintiff's Counsel apparently never explicitly told Defense Counsel that the documents in the January and March 2013 disclosures were the documents previously withheld (rightly or wrongly) on the grounds of confidentiality.

It appears from the briefing and evidence that Plaintiff is not withholding any documents on the basis of confidentiality, and Defendant's motion is therefore denied as moot with respect to such documents. However, Plaintiff is **DIRECTED** to inform Defendant explicitly within **SEVEN DAYS** from this Order whether it is withholding or redacting any documents on the basis of confidentiality, and if so, why they are being withheld or redacted given the October 2012 protective order. Defendant may renew its motion for waiver with

respect to any such documents withheld or redacted on the basis of confidentiality that have not been produced to Defendant in full.

### 3. University Urology Documents

Defendant argues that Plaintiff's University Urology documents located in a Work-a-Haulix storage unit have not been produced in response to any discovery request or listed on a privilege log.  Mot. Compel 8, ECF No. 62.

Plaintiff states the University Urology documents are the accounts payable and receivable records of University Urology and patient co-pay logs.  Plaintiff says those documents have not been produced and are not listed on a privilege log because they are not responsive to any document request.

The Court has reviewed Defendant's first set of document requests (the only set of requests provided to the Court), and agrees with Plaintiff that accounts payable, receivable records, and patient co-pay logs from University Urology do not appear responsive to any of the document requests except insofar as they can be construed as documents "pertaining" to Plaintiff's income in response to numbers five and seven.  Further, it seems the documents in the Work-a-Haulix unit would not be relevant nor would they lead to the discovery of admissible evidence.  Nonetheless, should Defendant believe the documents are discoverable, it shall send a specific document request to Plaintiff.  The Court would prefer the parties handle that request between themselves, perhaps permitting inspection of those documents pursuant to the protective order, before bringing another dispute over those documents to the Court.  As such,

Defendant's motion is denied with respect to the University Urology documents in the Work-a-Haulix storage unit.

## II.     CONCLUSION

Plaintiff's motion for sanctions, ECF No. 61, is denied.  Plaintiff's motion for extension of time, ECF No. 69, is granted in part.  Defendant's motion to compel due to Plaintiff's attorney-client waiver, ECF No. 62, is denied.

To avoid confusion in the future, the Court directs both parties to clearly reference supplemental disclosures as such.  Specifically, in this case, if a production contains supplemental responses, counsel shall clearly state that fact in a cover letter via reference to Rule 26(e).  Moreover, counsel shall always indicate which documents correspond to which discovery request.

Additionally, it appears from the instant motions that, at least to some extent, the parties are controlling discovery rather than the attorneys.  It is not up to the parties to determine which documents are turned over to counsel for review or are to be produced in discovery—that is a determination to be made by trial counsel following a review of the universe of documents.  To put a finer point on it, the Court expects trial counsel to be familiar with the universe of documents in this case and to be familiar with those documents that have been produced as well as those documents that have been withheld on a privilege log.  Protracted litigation over discovery drives up the legal expenses for the parties.  As officers of this Court, it is expected that counsel must work together to resolve discovery

disputes. This means communicating timely and directly to address outstanding issues.

Finally, the parties shall file a written notice on the docket within **THIRTY DAYS** as to whether they would agree to participate in mediation led by a magistrate judge of this Court. If the parties wish to participate in settlement negotiations, the Court would be willing to delay the deadline for concluding discovery and filing dispositive motions until after such negotiations take place. The Clerk shall terminate ECF Nos. 61 & 62 from the pending motions list.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**